Quintard *v.* De Wolf.

---

## QUINTARD *vs.* DE WOLF.

The plaintiff was employed by G. to build, for one S. a machine for crushing ore ; S. having previously arranged with D. & Co. to pay for the same, and the plaintiff looking to D. & Co. for payment, and commencing work upon the machine. Subsequently D. & Co. refused to pay for the machine, and the plaintiff, on being informed of such refusal, declined proceeding under his contract; whereupon the defendant promised, verbally, that if the plaintiff would go on and complete the machinery, he, the defendant, would pay for it ; *Held* that this was not an agreement to pay the debt of another, nor within the statute of frauds.

*Held also,* that the first contract was rescinded and terminated, for all purposes, upon the plaintiff's declining to proceed further with the same ; and consequently the agreement of the defendant was not collateral, but an independent and original agreement, and as such was valid and binding.

*Mallory* v. *Gillett* (21 *N. Y. Rep.* 412) commented upon, and distinguished from the present case.

THE complaint in this action alleged that the defendant contracted with the plaintiff for the construction by the plaintiff of a gold crushing machine, and that the defendant agreed with the plaintiff to pay to the plaintiff therefor the sum of $2500. And also that the defendant contracted with the plaintiff for the making by the plaintiff for the defendant of a fly-wheel, to be attached to said machine, for the sum of $125. The defendant, by his answer, denied these allegations. From the testimony it appears that in the spring

of 1855, one Samuel Gardiner, jun., who claimed to be an inventor of a machine for crushing gold quartz, agreed to furnish one of said machines to one John Steadman, for the price or sum of $2500, which sum Steadman was to pay therefor by his own drafts, accepted by De Wolf, Starr & Co., a firm in New York, not connected in business with the defendant. That Gardiner thereupon, in said spring, applied to the plaintiff to build said machine, and told him that he (Gardiner) wanted a crusher built, and that he would give him the acceptance of De Wolf, Starr & Co. to the paper of the party who was to have the crusher, and that he named Steadman as that party. That the plaintiff thereupon commenced the building of said machine in the spring of 1855, and proceeded with the work in said spring and the following summer and fall, until in October of that year, when it was nearly complete. About October, 1855, De Wolf, Starr & Co. refused to accept the drafts of Steadman for such machine, and Steadman thereupon applied to the defendant to accept his drafts for said machine when it should be completed, in place of the acceptance of De Wolf, Starr & Co.; which the defendant, some time in November, 1855, promised (verbally) to do. It was at this stage of the transaction that the defendant first had any thing to do with it. And he says that he merely promised (verbally) to accept Steadman's drafts for the price. The plaintiff, however, says that he went to the defendant and said to him that Gardiner told him (the plaintiff) that he (the defendant) would be responsible for this machine, and that the defendant told him to go on and make the crusher, and he would pay the plaintiff in his (the defendant's) notes, at four and six months from its completion, or would give him Mr. Steadman's draft on him (the defendant) accepted by him. Steadman refused to take the machine, or to give his drafts therefor; and the plaintiff thereupon brought this suit against the defendant, endeavoring to hold him as an original promiser, alleging that he, the plaintiff, made the machine for him, the defendant, and

at his request. At the trial the complaint was dismissed, on the ground that the promise of the defendant, as proved, was a collateral agreement to pay the debt of another, and that it not being in writing, it was void by the statute of frauds. Upon a motion made by the plaintiff for a new trial, the following opinion was delivered, at a general term of the court held in the county of Kings in February, 1860; present Justices Lott, Emott and Brown:

*By the Court,* EMOTT, J. " At the trial of this cause at the circuit, the complaint was dismissed after all the evidence was in, upon the ground that the contract proved was a collateral agreement by the defendant to pay the debt of a third person, and therefore void because not in writing. To sustain this ruling it must of course appear that there was no evidence upon which the jury could have found that the defendant made a distinct and original agreement to pay the plaintiff for the labor and materials for which this suit is brought, without reference to any other person.

The plaintiff was employed by one Gardiner, in the spring of 1855, to build a machine for crushing ore. Gardiner was the inventor of the machinery, but seems not to have been a person of any pecuniary responsibility, and accordingly he was not looked to for payment, by the plaintiff, at any time. The machinery was not for Gardiner, and this the plaintiff may have known. It is probable that he did, although he asserts that he was not informed for whom it was intended, until after the defendant became connected with the affair. This person was one Steadman, who resided in Nova Scotia. He had arranged with a firm of merchants doing business in New York as De Wolf, Starr & Co. to pay for the machine. When the plaintiff was originally employed by Gardiner to make this machinery, he was told he was to be paid by De Wolf, Starr & Co.; and he no doubt relied upon this representation, although he had no direct communication with those gentlemen. In the course of a few months, however,

some differences occurred between Steadman and this firm, and they declined to pay for the crusher as they had previously agreed to do. When this fact was communicated to the plaintiff by Gardiner, he says that he refused to go on with the work or complete the articles. This statement is not at all improbable, and is corroborated by other facts and the subsequent transactions. It is manifest that Gardiner was not considered sufficiently responsible, and as Steadman was a non-resident, of whose means the plaintiff must necessarily have been ignorant, it is altogether probable that when De Wolf, Starr & Co., upon whom the plaintiff had relied for payment, refused to be responsible, he threw up his contract and refused to complete the work. Gardiner being then anxious to have the machinery made and shipped, applied to the plaintiff again, and the plaintiff says he told him that if he would give a responsible party in New York he would go on and build the machinery. Mr. Gardiner then offered Mr. De Wolf, the defendant, who had no connection with the firm of which I have spoken, but of which another person of the same name was a member. The plaintiff having made some inquiries went to see the defendant, and the defendant told him to go on and make the machinery and he would pay him in his notes of four and six months, or in Steadman's drafts accepted by him, as he, the plaintiff, might prefer. This is the promise upon which the suit is brought, and if such a promise was really given, under the circumstances which I have mentioned, I think it was not within the statute of frauds. It is true there are some discrepancies and apparent contradictions in the plaintiff's testimony, but the effect of these upon his credibility would properly be for a jury to determine. We cannot pronounce in advance that his testimony was altogether unworthy of credit, or that all the evidence given in support of the plaintiff's claim was either incredible or plainly unreliable.

Assuming then these facts, we have substantially this case. The plaintiff having undertaken and commenced the work

Quintard *v.* De Wolf.

under promise of payment by De Wolf, Starr & Co., subsequently ascertains that they will not comply, and refuses to proceed with his contract. The defendant then promises if the plaintiff will go on and complete the machinery he will pay for it

I think this is not an agreement to pay the debt of another, nor within the statute of frauds. We have held in the case of *Burdon* v. *De Wolf*, decided at this term, that an agreement very similar if not precisely analogous to that made by De Wolf, Starr & Co. at the outset, was not within the statute. We held that a person promising to pay for machinery as they did was liable and no one else. But if no one but De Wolf, Starr & Co. was liable when they promised or were said to have promised to pay for the machinery, certainly no one else became liable afterwards. So that if the defendant promised to pay the debt of any other person it was that of De Wolf, Starr & Co. But the plaintiff abandoned his contract with them as soon as they notified their intention not to perform on their part. The contract between them was terminated by mutual consent. Under these circumstances, what passed between the plaintiff and the defendant was an entirely new agreement, with which no one else has any thing to do, and which was the only agreement in existence in relation to the machinery.

The case of *King* v. *Despard*, (5 *Wend.* 277,) closely resembles that before us. There the person for whom the work for which the suit was brought was originally to be performed, absconded, and thereupon the plaintiff refused to go on with the work. The defendant then represented that he had purchased the interest of the original contractor, and that if the plaintiffs would complete the work he would pay them for it. The court held that this was a new and independent agreement and not affected by the statute of frauds. The fact that the person who made the first contract had absconded was not the material point. The controlling feature in that case, as in this, was that the plaintiff had abandoned

and put an end to the first contract, so that whatever passed between them and the defendant was quite independent of it. So in *Gardiner* v. *Hopkins*, (5 *Wend.* 23,) after a printer had nearly completed the printing of a book for a bookseller, the latter failed and assigned the work to a third person, who promised the printer that his bill should be paid if he would complete and deliver the residue of the work. The court held the promise binding and not within the statute. On the other hand, in *Larson* v. *Wyman*, (14 *Wend.* 246,) the promise was made while the work was progressing. The labor was not commenced, nor resumed after it had been abandoned on the faith of this promise. The original promisor continued to be the principal debtor, and the defendant in that case was merely his surety. In *Mallory* v. *Gillett*, (23 *Barb.* 610,) the work had been entirely completed, and the person for whom it was done refusing or neglecting to pay for it, the defendant promised to pay the bill if the plaintiff would deliver the boat to the original contractor. This was clearly a promise to pay the debt of the person for whom the work was done and to whom it was delivered. The original contract with the latter was never rescinded, but on the contrary was recognized and fulfilled.

The case of *Payne* v. *Baldwin*, (14 *Barb.* 570,) seems to have been decided on its special circumstances, under which the court held that the intention of the parties was to hold the original contractor responsible and continue the contract. The new promise was therefore held to be collateral and within the statute. The case of *King* v. *Despard* was cited by Judge Edmonds, in giving the opinion, but I think due importance was scarcely given to what I consider a controlling feature of that case.

In the present case, if the fact was not undisputed that the plaintiff abandoned his original agreement and refused to complete the machinery when he was informed that De Wolf, Starr & Co. refused to carry out what he had been informed was their agreement as to payment, there was at least evi-

Quintard *v.* De Wolf.

dence from which a jury might readily come to that conclusion. If that were so, then the negotiation between the plaintiff and defendant was a new and independent agreement; and if the promise alleged by the plaintiff had been made out to the satisfaction of a jury, he would have been entitled to a verdict.

I think these questions should have been submitted to the jury, and that therefore the verdict should be set aside and a new trial ordered; the costs to abide the event."

A new trial was accordingly had, at the circuit in Kings county, in October, 1860, before Justice BROWN and a jury. At the close of the testimony the court charged in accordance with the above opinion. Various exceptions to the charge were made by the defendant, and certain requests to charge differently were made by him, which were refused, and the defendant excepted. The jury found a verdict in favor of the plaintiff for $3254.40. From the judgment entered on that verdict, and from an order made at a special term, on the 12th of October, 1860, denying his motion for a new trial, the defendant appealed to the general term.

*E. S. Young,* for the appellant.

*Joseph M. Pray,* for the respondent.

*By the Court,* EMOTT, J. When this case was before us on a previous occasion, we held that if the plaintiff abandoned and put an end to his original agreement made with Gardiner or De Wolf, Starr & Co. to construct the machinery for the price of which this suit was brought, and was then employed by the defendant to proceed and finish—the promise of the defendant made under such circumstances was not within the statute of frauds. At the second trial the jury were instructed in conformity with the rule thus indicated. The only material exceptions in the case were taken to these

instructions, and thus the only question now really before us is, whether our former decision was correct.

We should not have listened to an argument upon such a question, had it not been stated that the court of appeals in a recent case had overruled the doctrine which we recognized, and upon which the cause was tried. We were referred on the argument to the case of *Mallory* v. *Gillett*, (21 *N. Y. R.* 412.) In that case the court of appeals affirmed the judgment which had been given in this court and which is reported in 23 *Barb.* 610. The latter decision in the supreme court was cited by me in delivering the opinion in this case, and was not supposed to be, nor do I now see that it is, at all in conflict with the opinion. The point which the decision covers is contained in the first paragraph of the leading opinion in the court of appeals. "One Haines," says Judge Comstock, "owed the plaintiff a debt for repairs on a boat, for which the latter had a lien on the chattel. In consideration of the relinquishment of that lien, and forbearance to sue the original debtor, the defendant promised the plaintiff, without writing, to pay the debt at a future time. There is no pretense that the defendant's promise was given or accepted as a substitute for the original demand, or that such demand was in any manner extinguished. The promise was, therefore, to answer for the existing and continuing debt of another; or in the language of the books, it was a collateral promise. The consideration was perfect, but as there was no writing the case seems to fall within the very terms of the statute."

In the present case the judge charged the jury that if the plaintiff constructed the machinery for some other person than the defendant, or if, by an understanding among the parties, he was to become responsible for machinery which was building for Gardiner or Steadman, he was not responsible. He also charged that if after De Wolf, Starr & Co. had refused to pay for the work by giving their acceptances, and the plaintiff refused to go on with the work, the defendant

promised to pay for it, if he would complete it, the defendant was liable for the price. It will be observed that Steadman, who was to receive the machine, did not appear personally in the transaction at all. It might have been a question whether Gardiner or De Wolf, Starr & Co. were the persons originally and directly responsible for the machinery. It is not very material, however, if the original contractor, whoever he was, was discharged, and the contract terminated. The defendant's counsel asked the judge to instruct the jury that this was not the case, but that Gardiner continued from first to last liable to Quintard for the machinery. This was correctly refused, for it was asking a positive instruction as to what was, in the most favorable view for the defendant, a disputed question of fact. If the judge had been asked to say to the jury that if Gardiner was and continued all the time from first to last liable to Quintard for the machine, then the defendant was not liable, no doubt he would have so stated, for that is the import of his whole charge. The material fact insisted upon in the opinion already delivered, and with reference to which the case was tried the second time, was that the first contract was rescinded and terminated for all purposes, and therefore the agreement upon which the action was brought was not collateral but independent and original.

I have read with great interest the learned and ingenious review and classification of the cases upon this part of the statute of frauds, which forms the conclusion of Judge Comstock's opinion in *Mallory* v. *Gillett,* but I have not found in his reasoning any thing inconsistent with the views already deliberately expressed by this court. It would be sufficient, for us to stand by what we have decided, that the judgment in *Mallory* v. *Gillett* is not in conflict with it; but it is satisfactory to find that the most acute and exhausting discussion of the subject discloses nothing inconsistent with our views.

The judgment must be affirmed, with costs.

[DUTCHESS GENERAL TERM, May 13, 1861. *Emott, Brown* and *Scrugham,* Justices.]